FILED
 2010 Dec-17  AM 10:24
U.S. DISTRICT COURT
    N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ALBERT J. ISAAC, et al.,** } | |
| } | |
| **Plaintiffs,** } | |
| } | |
| v. } | **Case No.: 2:10-CV-143-RDP** |
| } | |
| **NORTHEAST CREDIT &** } | |
| **COLLECTIONS, INC., et al.,** } | |
| } | |
| **Defendants.** } | |

## MEMORANDUM OPINION

This case is before the court on Plaintiffs' Motion for Default Judgment (Doc. # 9), filed March 26, 2010. For the following reasons, the Motion is due to be granted.

**I.    PROCEDURAL HISTORY**

This action arises from Plaintiffs' Complaint, filed January 22, 2010, alleging violations by Defendants, Northeast Credit & Collections, Inc. ("NCC") and Commonwealth Financial Systems, Inc. ("CFS"), of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(B), and Alabama Code section 6-11-27. (Doc. # 1). On that same day, Plaintiff requested service by certified mail pursuant to Federal Rule of Civil Procedure 4(e)(1) and Alabama Rule of Civil Procedure 4(i)(2). (Doc. # 2). The Clerk of Court sent a copy of the Complaint and Summons to Defendants NCC and CFS via certified mail which Defendants received on February 1, 2010. (Doc. # 4). Beginning with the date of service, Defendants were permitted twenty-one days to answer or otherwise respond to Plaintiffs' Complaint (*i.e.*, Defendants' Answer or Rule 12 motion was due on or before February 22, 2010). FED. R. CIV. P. 12(a)(1)(A).    Defendants did not answer or otherwise respond to Plaintiffs'

Complaint by this deadline. Accordingly, on February 26, 2010, Plaintiffs filed a Motion for Default Judgment (Doc. # 5). The court construed the motion as a request for an entry of default (Doc. # 7), and on March 5, 2010, the Clerk of Court entered Defendants' default (Doc. # 8). On March 26, 2010, Plaintiffs filed the instant motion requesting the court to enter final judgment by default against Defendants and in favor of Plaintiffs. (Doc. # 9). On June 7, 2010, Plaintiffs filed a Motion for Judgment; Costs (Doc. # 13). By an Order dated June 9, 2010, the court stated that it was construing that motion as a supplement to Plaintiffs' original Motion for Default Judgment. (Doc. # 14).

On October 1, 2010, before the court ruled on Plaintiffs' Motion for Default Judgment, Defendants filed a Motion to Set Aside Entry of Default (Doc. # 15) and filed an answer to the complaint (Doc. # 16). The issue of whether to set aside the entry of default was heard by Magistrate Judge Paul W. Green on November 8, 2010. (Doc. # 23). On November 12, 2010, Magistrate Judge Green entered a Report and Recommendation recommending that Defendants' Motion to Set Aside Entry of Default be denied. (Doc. # 23). Defendants filed their objections to the Report and Recommendation on November 29, 2010. (Doc. # 26). After reviewing and considering *de novo* all the materials in the court file, including the magistrate judge's Report and Recommendation and the objections filed by Defendants, the court entered an order adopting the Report and Recommendation and denying Defendants' Motion to Set Aside Entry of Default. Because the entry of default was not set aside, it is now appropriate to determine whether Plaintiffs are entitled to default judgment.

**II.     STATEMENT OF FACTS**

In February 2009, Plaintiffs began receiving pre-recorded telephone messages on their home telephone phone voice mail system. (Doc. # 9-2, ¶ 1) On February 22, 2009, Plaintiffs received the following messages: (1) "Jeremy Isaac, please press 1, if this is not please press 2, or call us back at 1(800) 848-2170, thank you" and (2) "Hello this is a message only for Jeremy Isaac, if this is Jeremy Isaac please press 1, if this is not please press 2, or call us back at, thank you." (Doc. # 9-2, ¶ 18).  On February 23, 2009, Plaintiff Albert Isaac wrote a cease and desist letter which he sent certified mail to NCC. (Doc. # 9-2, pp 9-10).  The letter was received on February 26, 2009. (Doc. # 9-2 pp. 9-10).  On May 24, 2009, another call was placed from the same number as the first two calls.  That call left the following message:

> 170 to discuss your account have a good evening.  We hope you are enjoying the Memorial Day weekend. For your convenient [sic] we will be open from 8 a m to 11 PM eastern time on Monday May 25.  Please call us on Monday or during regular business hours on Tuesday at 1-800-848-2170 to discuss your account, have a good evening.

(Doc # 9-2, ¶ 19).

From April 14, 2009, to September 19, 2009, sixteen calls were received from telephone number (205) 413-8497 and at least four voice messages were left on Plaintiffs' voice mail. (Doc. # 9-2, ¶¶ 20-23, Doc. # 12 pp. 3-4).  At least three of the messages left on Plaintiffs' voice mail were directed to a "Mary W. Elmore." (Doc. # 9-2, ¶¶ 20-23).  These messages were phrased similarly to the messages directed to Jeremy Isaac; all requested that Plaintiffs call 1 (800) 848-2170. (Doc. # 9-2 ¶¶ 20-23). Plaintiffs maintain that they do not owe any money to nor have they established any business relationship with Defendants.  (Doc. # 9-1 p. 1; Doc. # 9-2 pp. 2-3).

## III.     DISCUSSION

Plaintiffs seek a Rule 55(b) default judgment against Defendants for monetary damages in the amount of $196,570.04, which include statutory damages, punitive damages, and costs. (Doc. ## 9, 13).  Rule 55(b) states in relevant part:

> (b)     Entering a Default Judgment.
>
> (1)     By the Clerk.  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2)     By the Court.  In all other cases, the party must apply to the court for a default judgment.  A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared.  If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals – preserving any federal statutory right to a jury trial – when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter.

FED. R. CIV. P. 55(b).  Although this court permits the Clerk of Court to enter default when appropriate pursuant to Rule 55(a),[1] it is the practice of the judges of this court to reserve all decisions about the entry of a Rule 55(b) default judgment for the discretion of the particular judge to which the case is assigned.

---

[1] Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."  FED. R. CIV. P. 55(a).

4

Upon default, the well-pleaded allegations of a complaint are taken as true. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). However, those facts still must constitute a legally cognizable claim. *See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). Because Defendants have previously been declared in default, their liability is established because the well-pleaded allegations substantiate Plaintiffs' claims.

### A. Fair Debt Collections Practices Act Claims

Plaintiffs allege that the calls to their home from Defendants violate four provisions of the FDCPA, specifically §§ 1692d(5), 1692d(6), 1692c(c), and 1692e(11). The section of the FDCPA dealing with civil liability provides in relevant part:

> (a) Amount of damages
> Except as otherwise provided by this section, any debt collector who fails to comply with *any provision* of this subchapter with respect to *any person* is liable to such person in an amount equal to the sum of--
> (1) any actual damage sustained by such person as a result of such failure;
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000
> * * *
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k (emphasis added). In other words, in order for Defendants to be held liable under the FDCPA, Plaintiffs need only establish a violation of one provision of the act. The court finds that they have met this burden.

While the court questions whether some of the alleged violations contained in Plaintiffs' complaint are supported by the facts of this case,[2] it is clear that Defendants violated at least one of the provisions of the FDCPA.  Section 1692d provides in relevant part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> * * *
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
>
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d.

With respect to § 1692d(5), it is undisputed that Defendants caused Plaintiffs' residential telephone to ring.  The question is whether Defendants did so with the "intent to annoy, abuse, or harass any person at the called number."  In the Eleventh Circuit it remains unclear how intent can be demonstrated for the purposes of § 1692d(5).  However, decisions from other jurisdictions provide some guidance.  In *Bingham v. Collection Bureau, Inc.*, the court considered the frequency of the calls and the time of day when they were transmitted in determining whether there had been a violation of § 1692d(5). 505 F. Supp. 864, 873 (D.N.D. 1981).  The court declined to reach a conclusion based on the content of the calls; instead, it found that the debt collector engaged in

---

[2] Specifically, Sections 1692c and 1692e(11) relate to communication with the "consumer." Consumer is defined in § 1692a as "any natural person obligated or allegedly obligated to pay any debt." Plaintiffs admit that they are not obligated to pay any debt to Defendants. (Doc. # 9-1, ¶ 1; Doc. # 9-2, ¶ 6). Further, Plaintiffs do not allege that Defendants are under the mistaken impression that Plaintiffs owe them money. In fact, the vast majority of the messages left on the Isaac's home answering machine were directed to either Mary W. Elmore or Jeremy Isaac. However, because the court finds that there are sufficient allegations of other violations of the FDCPA, it does not need to decide the issue of whether § 1692c(c) and § 1692e(11) apply to Plaintiffs.

harassment by immediately recalling the plaintiff after the plaintiff had hung up on the debt collector. *Id*. Similarly, in *Kuhn v. Account Control Technology, Inc.*, the district court found a violation of § 1962d(5) when the defendant called the plaintiff twice within five minutes after the plaintiff had hung up on the defendant's initial call. 865 F. Supp. 1443, 1453 (D. Nev. 1994). The rule that a "subsequent call alone could constitute harassment under § 1692d(5) regardless of the content of the call" was echoed in *Akalwadi v. Risk Management Alternatives, Inc.*. 336 F. Supp. 2d 492, 505-06 (D. Md. 2004). In that case the court noted that in determining intent under § 1692d(5), "actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls" *Id.* Yet another district court found a violation of § 1692d(5) when the debt collector continued to repeatedly call the plaintiffs after the plaintiffs had asked him to cease and desist and hung up the phone. *Chiverton v. Federal Financial Group, Inc.*, 399 F. Supp. 2d 96, 101 (D. Conn. 2005). Building upon the analysis laid down by *Kuhn* and *Chiverton*, the court in *Kerwin v. Remittance Assistance Corp*. concluded that the "[i]ntent to annoy, abuse, or harass may be inferred from the frequency of phone calls, the substance of the phone calls, or the place to which phone calls are made." 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008). Most recently, the court in *Gilroy v. Ameriquest Mortgage Company* articulated a standard that incorporates all of the aforementioned cases, recognizing that the frequency and volume of telephone calls can be used to show intent to annoy, abuse, or harass while also finding that:

> Intent may also be inferred by evidence that the debt collector continued to call the debtor after the debtor had asked not to be called and had repeatedly refused to pay the alleged debt, or during a time of day which the debtor had informed the debt collector was inconvenient.

632 F. Supp. 2d 132, 136 (D.N.H. 2009).

This court finds the rule enunciated in *Gilroy* to be consistent with the standards employed by other jurisdictions in determining liability under § 1692d(5), and such a rule appears appropriate and easy to administer in this case. Because Defendants repeatedly caused Plaintiffs' phone to ring, despite being asked to cease and desist communications, it is appropriate to infer for Rule 53 purposes that they did so with an intent to annoy, abuse, or harass. As such the requirements for finding a violation of § 1692d(5) have been met.

With respect to § 1692d(6), it is clear that the messages left on Plaintiffs' answering machine fail to meaningfully disclose the caller's identity. However, the issue is whether those messages fall within the requirements of § 1692b and as such are exempted from § 1692d(6). Section 1692b sets out the requirements for what a debt collector can and cannot do when communicating with a person other than the consumer for the purpose of acquiring location information about the consumer. It specifically states that the debt collector shall only identify his employer if expressly asked and shall not state that the consumer owes any debt. 15 U.S.C. § 1692b(1)-(2). Accordingly, it is clear that those messages that do not state who the message is for comply with § 1692b and as such are exempt from the requirements of § 1692d(6). Further, while it is certainly true that the messages specifically left for Mary W. Elmore and Jeremy Isaacs fail to meaningfully disclose the caller's identity, the court questions whether the Plaintiffs in this case have standing to complain about the lack of disclosure. However, the court does not need to reach a decision on this issue because of its previous finding that Defendants violated § 1692d(5).

### B.    Telephone Consumer Protection Act Claims

Plaintiffs also contend that Defendants violated the TCPA by their frequent use of pre-recorded voice messages. The TCPA, in relevant part, makes it unlawful

> to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications] Commission under paragraph (2)(B).

47 U.S.C. § 227(b)(1)(B).  Paragraph (2)(B) allows the Commission to exempt calls that are not made for a commercial purpose or are of such classes or categories that will not adversely affect the privacy rights that the TCPA is intended to protect and do not include the transmission of any unsolicited advertisement.  The messages left by Defendants do not meet the requirements for an exemption as laid out in paragraph (2)(B).  Accordingly, Plaintiffs have made sufficient allegations to show that Defendants' use of prerecorded calls to Plaintiffs' residential telephone without their prior express consent (and, indeed, against requests to cease and desist) violated the TCPA.

    **C.**    **State Law Claims**

Plaintiffs also allege negligent supervision and inadequate training in violation of Alabama Code § 6-11-27.  Neither of these claims are independent causes of action; in fact, both claims depend on an underlying wrong by an agent, employee, or servant. Ala. Code. § 6-11-27 (listing the circumstances when the principal, employer, or other master can be liable for the intentional wrongful conduct of an agent, employee, or servant).  Further, courts require the underlying wrong to be one recognized under Alabama law.  *See Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009) ("To support a claim of negligent supervision, the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law, *Stevenson v. Precision Standard, Inc.*, 762 So.2d 820, 824 (Ala.1999), (2) the employer had actual notice of this conduct or would have gained such notice if it exercised "due and proper diligence," *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So.2d 665, 682 (Ala.2001), and (3) the employer failed to respond

to this notice adequately. *Id.*"). In this case Plaintiffs have not alleged any violations of state law, nor have they presented any facts regarding Defendants' notice of such violations. Accordingly, it is not appropriate for the court to enter judgment in favor of Plaintiffs on these claims.

## IV.     CONCLUSION

Based upon the court's review of the affidavit testimony and the relevant case law, Plaintiffs' request for a default judgment against Defendants NCC and CFS is due to be granted on claims related to the FDCPA and the TCPA. Prior to entry of a final judgment the court will conduct a hearing to determine damages.[3] The court will enter an order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this ____17th____ day of December, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[3] While Plaintiffs' status as "professional plaintiffs" has no bearing in the determination of whether the entry of default should be set aside, the court notes that said status may be a factor when determining damages with respect to the entry of default judgment.